# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| ASHLEY SMART, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case 1:22-cv-00024 ) ) JURY DEMANDED |
| FLOWAV, INC., | ) ) |
| Defendant. | ) |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Ashley Smart, through counsel, hereby sues Defendant, FloWav, Inc. Pursuant to rule 8.01 of the Tennessee Rules of Civil Procedure, Plaintiff states her claims as follows:

### PARTIES

1. Plaintiff Ashley Smart is an adult citizen and resident of Hamilton County, Tennessee.

2. Defendant FloWav, Inc., ("FloWav") is a corporation that was formed in Delaware and that maintains its principal place of business in Pennsylvania that maintained a location in Hamilton County, Tennessee. Defendant's registered agent is Corporation Service Company, 2595 Interstate Drive #103, Harrisburg, PA 17110.

### JURISDICTION AND VENUE

3. Jurisdiction and venue are proper in this Court because a substantial part of the circumstances giving rise to this cause of action occurred in Hamilton County, Tennessee.

1

## FACTUAL ALLEGATIONS

4. Defendant is in the business of promoting and selling flow monitoring and inspection equipment for use in wastewater and other open channels.

5. Upon information and belief, Ms. Smart began working for FloWav, Inc. (hereinafter "FloWav") on April 1, 2015, and resigned on or about July 13, 2021.

6. In 2016, Mr. Kraig Moodie, President of FloWav, told Ms. Smart that he intended for her to be making a salary of $75,000 by the end of 2016.

7. However, at the end of 2016, Ms. Smart's compensation package was not increased.

8. In August 2018, Ms. Smart approached Kraig Moodie. She reported that she deserved additional compensation and that she had not received the increased compensation package that she had been promised.

9. In August 2018, Ms. Smart and Kraig Moodie agreed that Ms. Smart would begin receiving the following compensation package: Ms. Smart would receive an annual salary of $75,000; Ms. Smart would receive a 1.5% commission that would increase to 5% at $500,000, and that would further increase to 10% at $1,000,000. Ms. Smart would also be paid the difference between the amount she had been paid and the agreed upon $75,000, retroactive to January 2017.

10. In 2018, FloWav provided Ms. Smart with two supplemental deposits. However, FloWav did not increase Ms. Smart's salary or pay her commissions consistent with the agreement reached between Ms. Smart and Mr. Moodie.

11. In April 2019, Ms. Smart once again reported to Mr. Moodie that she was not being paid correctly and was not being paid commission.

2

12. In July 2019, Mr. Moodie requested for Ms. Smart to send him a sales report so that he could identify the number of commissions owed to Ms. Smart for 2019. Ms. Smart sent Mr. Moodie a sales report. However, no additional commissions were ever paid.

13. In March 2021, Ms. Smart, yet again, notified Mr. Moodie that she was not being paid correctly and was not receiving her commissions. At Mr. Moodie's request, Ms. Smart sent Mr. Moodie an email containing a sales report and describing the approximate amount of retroactive salary due to her at that time.

14. In response, Mr. Moodie said the following:

> Thank you for sending over the update below. I know it has taken us a little longer than we hoped to get some of your salary payments updated. Thank you for your patience and we look forward to getting the company into a position financially finally bring your compensation package current as you have outlined below. We will work through the team projects and find the split that works for everyone.

15. On May 25, 2021, Don Sauer notified Ms. Smart that Mr. Moodie was no longer with FloWav effective immediately and that she would start sending her daily reports directly to Mr. Sauer.

16. Ms. Smart replied to Mr. Sauer's email and informed him of that fact that she had not been paid correctly and asked to discuss when she would be receiving her negotiated salary.

17. After receiving no reply from Mr. Sauer on her May 25, 2021, email, Ms. Smart emailed Bruce Cohen, one of the owners of FloWav, and copied Shari Snyder, the company's accountant, on July 9, 2021, regarding her unpaid salary. Ms. Smart notified Mr. Cohen that she had been trying to rectify this situation with Mr. Moodie since at least 2018.

18. Mr. Cohen indicated to Ms. Smart that he was not aware of her negotiated salary and indicated that Mr. Moodie never made him aware of her compensation rate or the fact that she

was owed commission. Mr. Cohen further indicated that the $10,000 Ms. Smart was paid in 2018 was supposedly for a "bonus."

## VIOLATION OF T.C.A. § 47-50-114

19. Ms. Smart alleges that FloWav violated Tennessee Code Annotated § 47-50-114.

20. FloWav was a "principal" within the meaning of Tennessee Code Annotated § 47-50-114.

21. Ms. Smart was a "sales representative" within the meaning of Tennessee Code Annotated § 47-50-114.

22. Ms. Smart has not been paid the agreed upon amount of her commissions. Ms. Smart alleges that she is entitled to treble damages, attorneys' fees, and costs.

## BREACH OF CONTRACT

23. Ms. Smart alleges that she entered into a verbal contract with FloWav for a compensation package that included a salary of $75,000; the payment of the difference between her paid salary and $75,000 retroactive to January 2017; and the payment of commissions at the rate of a 1.5% commission up to $500,0000, 5% from $500,000 to $1,000,000, and 10% above $1,000,000.

24. Ms. Smart alleges that Defendant has breached this contract.

25. Ms. Smart alleges that she is entitled to the full amount of her unpaid salary and commissions with interest.

## PROMISSORY ESTOPPEL

26. Ms. Smart alleges that Defendant is liable to Ms. Smart under a claim of promissory estoppel.

27. Defendant made an unambiguous promise to Ms. Smart that she would be paid a salary of $75,000 plus commissions (as described above).

28. Defendant did not intend to carry out the promise made to Ms. Smart at the time it made the promise as evidenced by the extensive delay of several years and the fact that Bruce Cohen, one of the owners, had no knowledge of the promise.

29. In continuing her employment with Defendant, Ms. Smart relied on this promise to her detriment by not seeking out other better-paying jobs.

30. Ms. Smart's reliance on Defendant's promise was both reasonable and foreseeable given the repeated assurances that Defendant gave her regarding the promise.

31. The detriment suffered by Ms. Smart in reliance on Defendant's promise was substantial.

32. Ms. Smart alleges that she is entitled to the full amount of her unpaid salary and commissions with interest.

WHEREFORE PLAINTIFF PRAYS:

a. That Plaintiff be awarded compensatory damages of $200,000 or an amount to be determined by the Jury.

b. That Plaintiff be award exemplary damages in an amount not to exceed treble the amount of her unpaid commission.

c. That Plaintiff be awarded attorneys' fees, costs and expenses.

d. That the Court aware Plaintiff such other, further, and general relief to which she may be entitled.

e. That a JURY be empaneled to try this action.

5

Respectfully Submitted,

**MASSEY & ASSOCIATES, P.C.**

*/s/ Joshua R. Ward*
Joshua R. Ward, BPR# 031329
R. Ethan Hargraves, BPR# 033331
6400 Lee Highway, Suite 101
Chattanooga, TN 37421
Ph: 423.697.4529
F: 423.634.8886
josh@masseyattorneys.com
ethan@masseyattorneys.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served via the CM/ECF system this 24th day of February 2022, on the following:

> Samantha Gerken, Esq.
> 4031 Aspen Grove Drive, Suite 290
> Franklin, TN 37067
> *Attorney for Defendant*

**MASSEY & ASSOCIATES, P.C.**

*/s/ Joshua R. Ward*
Attorney for Plaintiff
