UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| ASHLEY SMART, | ) | |
| Plaintiff, | ) ) ) | 1:22-CV-00024-DCLC-SKL |
| v. | ) ) | |
| FLOWAV, INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ashley Smart ("Smart") initiated this action against her former employer, Defendant FloWav, Inc. ("FloWav"), alleging common law claims for breach of contract and promissory estoppel, along with a violation of Tennessee's Commission Statute, Tenn. Code Ann. § 47-50-114 [Doc. 8, ¶¶ 19–32], after FloWav allegedly failed to pay her according to an agreement she reached with her supervisor, FloWav's president Kraig Moodie [Doc. 8, ¶¶ 9, 18]. FloWav now moves for partial summary judgment on the statutory claim [Doc. 31]. Smart moves for summary judgment on the breach of contract claim and FloWav's affirmative defenses [Doc. 34]. FloWav responded in opposition to Smart's motion [Doc. 37], but Smart has yet to file a response to FloWav's motion and the time to do so has passed. *See* E.D. Tenn. L.R. 7.1(a). Thus, the motions are ripe for review. For the reasons stated herein, FloWav's motion [Doc. 31] is **GRANTED**, and Smart's motion [Doc. 34] is **GRANTED IN PART AND DENIED IN PART**. FloWav additionally filed a Motion to Stay pending the Court's ruling on its Partial Motion for Summary Judgment [Doc. 40; *see* Doc. 42, pgs. 1–2]. The Court has now ruled on the partial summary-judgment motion, so the Motion to Stay [Doc. 40] is **DENIED AS MOOT**.

1

I.  BACKGROUND

FloWav rents and sells equipment to consumers for monitoring and inspecting the flow of wastewater or other open channels [Doc. 33, ¶¶ 3–8]. FloWav hired Smart in April 2015 [*Id.* at ¶ 10]. Moodie, FloWav's then-president, wrote to Smart that she would "be responsible for first line customer support" for FloWav products and for "the support and growth [of] the new equipment rental program to be launched in 2015" [Doc. 33-1, pg. 25]. Smart's offer letter informed her she would earn a yearly salary of $55,380.00 and that a "variable compensation program (commission program) [would] be mutually developed to provide [her] with a defined compensation incentive based on the growth of the new rental program" [Doc. 33-1, pg. 25]. CEO Bruce Cohen reviewed and approved the offer letter before Moodie sent it [Doc. 34-2, pg. 6].

As president, Moodie managed FloWav's day-to-day operations [Doc. 34-3, pgs. 3–4]. That included "communicating" with employees about their compensation [Doc. 38, ¶ 15; Doc. 34-3, pgs. 5–6]. However, Moodie needed CEO Bruce Cohen's permission to make certain decisions, including whether to hire, discipline, or fire employees or to set an employee's pay [Doc. 38, ¶ 9; Doc. 38-2, pgs. 6–7]. But Smart claims she was not aware Cohen ran the company until near the end of her tenure [Doc. 38, ¶ 6]. She believed Moodie was "responsible for everything" and was unaware that Cohen made "all the decisions" [Doc. 38, ¶¶ 6–7].

In August 2018, Smart and Moodie discussed Smart's compensation plan and reached an agreement, memorialized in an August 8, 2018 email from Smart, that she would earn $75,000 per year with a 1.5% commission [Doc. 38, ¶¶ 20–22; Doc. 34-3, pgs. 8–10; Doc. 34-6, pg. 5]. That commission would increase to 5% if her sales totaled $500,000 or more, and 10% if $1,000,000 or more [Doc. 34-6, pg. 5]. The $75,000 salary was "to be retroactive to January 2017" [Doc. 34-6, pg. 5]. At his deposition, Moodie affirmed that Smart's email containing these terms accurately

2

represented the agreement they reached [Doc. 34-3, pgs. 9–10].

FloWav, however, did not pay Smart in accordance with her agreement with Moodie [Doc. 38, ¶ 23; Doc. 38-2, pg. 15]. She did receive two $5,000 payments sometime in 2018 which she understood to be "getting her up to date" before increasing her salary [Doc. 34-1, pg. 10]. At his deposition, Moodie stated those payments applied toward Smart's $75,000 salary for that year [Doc. 34-3, pg. 16]. However, Cohen claims that Moodie told him the payments were a year-end bonus for Smart [Doc. 38, ¶ 35; *see* Doc. 34-5; Doc. 38-2, pgs. 16–17].

Smart continued to communicate with Moodie between 2018 and 2021 about her salary and her sales, which under their agreement would garner commissions [Doc. 38, ¶ 24; Doc. 34-6, pgs. 1–4]. According to Smart, Moodie at some point asked her to send him a sales report from the first quarter of 2019 to "try to get [her] paid on that" [Doc. 34-1, pg. 11]. But Moodie experienced "pushback" from management when it came time to pay [Doc. 34-3, pg. 15]. Cohen claimed the company was never in a financial position to pay the increased salary and commissions [Doc. 34-3, pg. 15; Doc. 38-2, pgs. 11–12]. On March 7, 2021, Moodie explained to Smart "we look forward to getting the company into a position financially [to] finally bring your compensation package current" [Doc. 34-6, pg. 1]. By the end of May 2021, however, FloWav had terminated Moodie [*See* Doc. 38, ¶ 29]. Smart then notified Cohen that she believed she had unpaid earnings [Doc. 38, ¶ 31; Doc. 34-1, pg. 18]. On July 13, 2021, Cohen emailed Smart explaining Moodie had never requested commissions for Smart from him, nor to Cohen's understanding had Moodie ever finalized a commission plan [Doc. 34-5]. This suit followed.

Smart alleges, in relevant part, that FloWav violated Tenn. Code Ann. § 47-50-114 by failing to pay the agreed upon amount of her commissions [*see* Doc. 8, ¶¶ 19–22], and that FloWav breached the compensation package contract formed between her and Moodie [*Id*. at ¶¶ 23–25].

3

In its Answer to Plaintiff's Amended Complaint, FloWav asserted various affirmative defenses, including failure to state a claim, lack of damages, failure to mitigate damages, unclean hands, statute of limitations, waiver/estoppel/laches, and reservation of its right to amend its Answer to assert any additional defenses [Doc. 21, pgs. 4, 5]. FloWav now seeks partial summary judgment on Smart's claim for unpaid commissions under Tenn. Code Ann. § 47-50-114 [Doc. 31]. Smart seeks summary judgment on her breach of contract claim and FloWav's affirmative defenses [Doc. 35, pg. 1].

## II. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the Court must generally view the facts contained in the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "come forward with significant probative evidence showing that a genuine issue exists for trial." *McKinley v. Bowlen*, 8 F. App'x 488, 491 (6th Cir. 2001). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the nonmoving party based on the record. *Id.*

## III. DISCUSSION

### A. Unpaid Commissions, Tenn. Code Ann. § 47-50-114

FloWav argues the Court should dismiss Smart's claim under Tenn. Code Ann. § 47-50-

4

114, because the statute is inapplicable [Doc. 31]. That statute provides that a "principal" must pay commissions to a "sales representative" whenever commissions are due under a contract between the parties. Tenn. Code Ann. § 47-50-114(b)(1). For purposes of the statute, a "principal" is "a person who: (A) [m]anufactures, produces, imports, or distributes a product for *wholesale*; (B) [c]ontracts with a sales representative to solicit orders for the product; and (C) [c]ompensates the sales representative, in whole or in part, by commission[.]" *Id.* § 47-50-114(a)(2) (emphasis added). Similarly, a "sales representative" is "a person who contracts with a principal to solicit *wholesale* orders and who is compensated, in whole or in part, by commission[.]" *Id.* § 47-50-114(a)(3) (emphasis added).

FloWav asserts the statute is inapplicable, because (1) to the extent it engaged in sales, it sold directly to consumers rather than wholesale to retailers and (2) Smart engaged only in the solicitation of customers to rent equipment and for direct sales rather than solicitation of wholesale orders [Doc. 32, pg. 6]. Thus, FloWav contends it is not a "principal" and Smart is not a "sales representative" as defined by the statute [Doc. 32, pg. 6]. Though § 47-50-114 does not define "wholesale," one court interpreting the statute observed, "all persuasive legal authority defines wholesale as the sale of goods to a retailer who resells to a consumer." *Brock v. Positive Changes Hypnosis, LLC*, 534 F.Supp.2d 793, 796 (W.D. Tenn. 2008) (citations omitted). In *Brock*, the Court held that § 47-50-114 did not apply where the plaintiff worked for a company that offered hypnosis services directly to clients. *Id.*

Here, Cohen testified that neither FloWav nor Smart sold products to retailers to be resold to consumers [Doc. 33, ¶ 6; *see* Doc. 33–2, pgs. 3–4]. Smart failed to respond to FloWav's motion, and in any event, the record reveals no evidence that FloWav sold products to retailers for resale. Because the undisputed facts show Smart and FloWav were not wholesalers, § 47-50-114 does not

5

apply. Therefore, FloWav's motion for partial summary judgment [Doc. 31] is **GRANTED**.

### B. Breach of Contract

Smart asserts she is entitled to summary judgment on her breach of contract claim [Doc. 34]. To prevail, she must show "the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011) (citing *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). Here, it is undisputed that Moodie and Smart reached an agreement regarding an increased salary and the payment of commissions and Smart did not receive the agreed upon payments [Doc. 38, ¶¶ 21–23]. What is disputed, however, is whether FloWav is bound by the agreement. FloWav consistently asserts that it was not aware of the agreement between Smart and Moodie and that Moodie did not have the authority to determine employee salaries and pay without Cohen's permission [Doc. 38, ¶¶ 9, 23, 34]. Smart asserts Moodie had apparent authority to bind FloWav to the compensation package agreement [Doc. 35, pg. 11].

"When an agency relationship has been established, the principal may be bound by the acts of the agent performed on the principal's behalf and within the actual or apparent scope of the agency." *Creech v. Addington*, 281 S.W.3d 363, 373 (Tenn. 2009) (citing *Boren ex rel. Boren v. Weeks*, 251 S.W.3d 426, 432 (Tenn. 2008) and *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000)). Thus, an agent's actions bind the principal if the agent acted within its actual or apparent authority. *Savage v. City of Memphis*, 464 S.W.3d 326, 333 (Tenn. Ct. App. 2015). Tennessee courts define apparent authority as: "(1) such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; (2) such authority as he appears to have by reason of the actual authority which he has; [and] (3) such

6

authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *Franklin Distrib. Co. v. Crush Int'l (U.S.A.), Inc.*, 726 S.W.2d 926, 930 (Tenn. Ct. App. 1986) (citations omitted). What matters is not the parties' intentions, but the facts and circumstances of the case. *Id.* (citing *Rich Printing Co. v. McKellar's Estate*, 330 S.W.2d 361, 376 (Tenn. Ct. App. 1959)).

"Apparent authority is essentially agency by estoppel, in that its creation and existence depend[] on some conduct by the principal that will preclude him from denying liability for the acts of the agent." *Savage*, 464 S.W.3d at 333 (citing *Boren*, 251 S.W.3d at 432). Accordingly, "a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority." *Boren*, 251 S.W.3d at 433 (quoting *S. Ry. Co. v. Pickle*, 197 S.W. 675, 677 (1917)). Moreover, the party seeking to bind the principal must have "knowledge of the facts and a good faith belief" in the agent's authority and must "rely on this apparent authority to his or her detriment." *Id.* (quoting *Mechs. Laundry Serv. v. Auto Glass Co. of Memphis*, 98 S.W.3d 151, 157 (Tenn. Ct. App. 2002)). "[T]he existence of apparent authority is a question of fact that should normally be left to the jury." *Permobil, Inc. v. Am. Exp. Travel Related Servs. Co.*, 571 F. Supp. 2d 825, 832 (M.D. Tenn. 2008) (citations omitted).

Here, questions of fact remain as to Moodie's apparent authority to offer Smart a raise and commissions. Smart argues FloWav made Moodie "president" of FloWav and gave him responsibility for "operation, sales, and growth" of the company [Doc. 35, pg. 10; *see* Doc. 34-2, pg. 3; Doc. 34-3, pgs. 2–4]. But Moodie's title alone sheds little light on what authority he had, and, in any event, Smart does not explain how FloWav's "operation, sales, and growth" relates to

its employees' pay.

Smart argues Moodie bore significant responsibility for "communicating with employees about what their compensation packages would be" [Doc. 35, pg. 10; *see* Doc. 34-3, pgs. 5–6]. But the record does not reveal what exactly Moodie was communicating. Was he negotiating raises with employees? Promising bonuses? Offering benefits? Smart does not say. She therefore has failed to show what authority Moodie "appear[ed] to have by reason of the actual authority which he ha[d]." *Franklin Distrib. Co.*, 726 S.W.2d at 930. Moodie did provide Smart's starting salary in her offer letter, which Cohen read and approved, [*see* Doc. 34-2, pg. 6], and noted Smart and FloWav would "mutually develop" a commission plan [Doc. 33-1, pg. 25]. But a jury could reasonably find that despite Moodie's authority to communicate those aspects of Smart's compensation, her belief that he could increase her pay without further approval was unreasonable. And although Smart believed at the outset of her employment that Moodie was "responsible for everything," [Doc. 35, pg. 11; *see* Doc. 34-1, pg. 9], she fails to explain the basis for her belief and why it was reasonable.

Smart cites *V. L. Nicholson Co. v. Transcon Inv. & Fin. Ltd.* 595 S.W.2d 474 (Tenn. 1980) [Doc. 35, pg. 10]. There, a contractor sought to recover for extra work it performed outside the scope of the original written contract. *V. L. Nicholson*, 595 S.W.2d at 479. The owner had authorized the developer to make progress payments to the contractor, and the developer did so throughout the project. *Id.* at 478. The court held the owner had bestowed apparent authority on the developer to approve the extra work because approval authority "necessarily inhere[d] in [the developer's] authority to make progress payments." *Id.* at 483. Here, by contrast, although Moodie acted within his authority to "communicat[e]" with employees regarding pay, [Doc. 34-3, pgs. 5–6], there is no indication a power to negotiate additional compensation "inhere[d] in" his

8

authority to communicate. *V. L. Nicholson*, 595 S.W.2d at 483.

Because Smart fails to carry her summary-judgment burden of showing Moodie had the authority he needed to bind FloWav to his agreement with Smart, the Court **DENIES** summary judgment as to the breach of contract claim.

### C. FloWav's Affirmative Defenses

Smart argues FloWav cannot prove its affirmative defenses of failure to mitigate damages (Third Affirmative Defense); unclean hands (Fourth Affirmative Defense); statute of limitations (Fifth Affirmative Defense); and waiver, estoppel, and laches (Sixth Affirmative Defense) [Doc. 35, pgs. 11–16; *see* Doc. 21, pgs. 4–5]. FloWav responds only to Smart's argument as to the statute of limitations [Doc. 37, pgs. 4–5]. Each of the aforementioned affirmative defenses are examined in turn.

#### 1. Mitigation of Damages

In Tennessee, "one who is injured by the wrongful or negligent act of another, whether by tort or breach of contract, is bound to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage …." *Memphis Light, Gas & Water Div. v. Starkey*, 244 S.W.3d 344, 353 (Tenn. Ct. App. 2007) (quoting *Cook & Nichols, Inc. v. Peat, Marwick, Mitchell & Co.*, 480 S.W.2d 542, 545 (Tenn. Ct. App. 1971)). "The injured party is not, however, required to mitigate damages where the duty would impose an undue burden or be impossible under the circumstances." *Id.*

Here, Smart reached an agreement with Moodie for a raise and commissions [*See* Doc. 34-3, pg. 9; Doc. 34-6, pg. 5]. She seeks the difference between what Moodie promised and what FloWav in fact paid her [*See* Doc. 38, ¶¶ 40–43]. Even after the agreement with Moodie, Smart continued updating him on amounts she believed FloWav owed her and the amounts of her sales

9

[*See* Doc. 34-6, pgs. 1–4]. Yet, management rebuffed Moodie's attempts to secure additional pay for Smart [Doc. 34-3, pg. 15]. And in any event, management maintained FloWav was never in a financial position to pay Smart's increased salary and commissions [*Id.*; Doc. 38-2, pgs. 11–12]. Smart has made the necessary showing that she could not have secured the additional pay she claims she was owed without undue burden. Because Smart has carried her summary-judgment burden, the motion is **GRANTED** as to FloWav's mitigation of damages defense.

2. **Unclean Hands**

FloWav alleges the doctrine of "unclean hands" bars Smart's claims [Doc. 21, pg. 5]. Under that doctrine, a court may "decline to grant relief to parties who have willfully engaged in unconscionable, inequitable, immoral, or illegal acts with regard to the subject matter of their claims." *Fuller v. Cmty. Nat'l Bank*, --- S.W.3d ----, No. E201802023COAR3CV, 2020 WL 1485696, at *4 (Tenn. Ct. App. Mar. 27, 2020) (quoting *Williams v. Hirsch*, No. M2016-00503-COA-R3-CV, 2018 WL 2383612, at *7 (Tenn. Ct. App. May 25, 2018)). "[F]or the unclean hands doctrine to apply, the inequitable or immoral conduct 'must relate to the particular transaction which is the subject of the litigation.'" *Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 353 (Tenn. Ct. App. 2009) (quoting *Chappell v. Dawson*, 308 S.W.2d 420, 421 (Tenn. 1957)).

Smart argues, and the Court agrees, that the current record would not support a finding that Smart committed misconduct associated with her agreement with Moodie or FloWav's subsequent failure to follow it [Doc. 35, pg. 16]. Smart testified at her deposition that she believed Moodie was responsible for employees' pay and was unaware of Cohen's role until later [Doc. 38, ¶¶ 6–7, Doc. 34-1, pgs. 6, 9]. There is no indication in the record that she misled Moodie or FloWav in negotiating the agreement. FloWav neither offers a response to Smart's argument nor points to any evidence of wrongdoing on her part [*See* Doc. 37, pgs. 4–5]. Smart's motion is therefore

**GRANTED** as to FloWav's defense of unclean hands.

3.      **Statute of Limitations**

FloWav asserts that the three-year statute of limitations provided for in Tenn. Code Ann. § 28-3-105 applies to Smart's breach of contract claim because the "core" of her complaint is wage or compensation recovery [Doc. 37, pgs. 4–5]. Thus, FloWav argues any claim for unpaid wages arising from the August 2018 agreement must have been brought by August 2021 [*Id.*]. In contrast, Smart argues the six-year statute of limitations applicable to breach of contract actions applies [Doc. 35, pg. 13]; *see* Tenn. Code Ann. § 28-3-109(3). Despite the disagreement, the Court need not decide the applicable statute of limitations because Plaintiff's claim is timely under either limitations period.

A cause of action accrues "when the plaintiff knew or reasonably should have known that a cause of action existed." *Stone v. Hinds*, 541 S.W.2d 598, 599 (Tenn. Ct. App. 1976). Tennessee Courts have consistently held that a cause of action under Tenn. Code Ann. § 28-3-105 "accrues at the time the injury occurs, or when it is discovered, or when in the exercise of reasonable care and diligence the injury should have been discovered." *Prescott v. Adams*, 627 S.W.2d 134, 138 (Tenn. Ct. App. 1981). As of March 7, 2021, Smart was under the impression that payment pursuant to the compensation package was forthcoming [*See* Doc. 34-6, pg. 1]. Thus, it is unlikely that Smart could have reasonably discovered at that point that she would not be paid in accordance with the agreement. Rather, the record shows that Smart did not discover that FloWav would not honor the compensation plan agreement until July 13, 2021, when Cohen notified her that he had never approved such a plan [Doc. 34-5]. Smart filed this action five months later, within the three-year limitations period provided by Tenn. Code Ann. § 28-3-105. Accordingly, regardless of which limitations period applies, Smart timely filed the instant action. Thus, her motion is

**GRANTED** to the extent she seeks summary judgment on FloWav's statute of limitations defense.

4.  **Waiver**

Smart argues she did not waive her rights under her compensation agreement [Doc. 35, pg. 14]. "A waiver is an intentional relinquishment of a known right." *Gitter v. Tenn. Farmers Mut. Ins. Co.*, 450 S.W.2d 780, 784 (Tenn. Ct. App. 1969) (citing *Baird v. Fidelity-Phenix Fire Ins. Co.*, 162 S.W.2d 384, 388 (Tenn. 1942) and *State ex rel. Lea v. Brown*, 64 S.W.2d 841, 848 (1933)). "[T]here must be clear, unequivocal and decisive acts of the party or an act which shows determination not to have the benefit intended in order to constitute a waiver." *Id.* (citing *Webb v. Bd. of Trs. of Webb Sch.*, 271 S.W.2d 6 (1954)).

Here, as explained, Smart continued to communicate with Moodie about their agreement after it was formed [*See* Doc. 34-6, pgs. 1–4]. When she learned that she would need to communicate with Cohen after Moodie's termination, she brought the unpaid salary and commissions to his attention [Doc. 38, ¶ 31; *see* Doc. 34-1, pg. 18]. None of those communications stated "clear[ly], unequivocal[ly], and decisive[ly]" that Smart intended to forego the payments she and Moodie agreed to. *Gitter*, 450 S.W.2d at 784; [*see* Doc. 34-6, pgs. 1–4; Doc. 34-1, pg. 18]. Therefore, Smart's motion is **GRANTED** to the extent she seeks summary judgment on this defense.

5.  **Estoppel**

Smart next argues FloWav's estoppel defense fails [Doc. 35, pgs. 14–15]. "There are three kinds of estoppel … : (1) by record, (2) by deed, and (3) by matter in pais," also called "equitable estoppel." *Duke v. Hopper*, 486 S.W.2d 744, 748 (Tenn. Ct. App. 1972) (citing *Denny v. Wilson County*, 281 S.W.2d 671 (Tenn. 1955)). "The elements a party must show to invoke the doctrine of equitable estoppel are the following: (1) his or her lack of knowledge and of the means of

12

knowledge of the truth as to the facts in question; (2) his or her reliance upon the conduct of the party who is estopped; and (3) action by the invoking party based thereon of such a character as to change that party's position prejudicially." *CBS Outdoor, Inc. v. Tenn. Dep't of Transp.*, No. M201401677COAR3CV, 2015 WL 6859784, at *7 (Tenn. Ct. App. Nov. 6, 2015) (quoting *Sexton v. Sevier Cnty.*, 948 S.W.2d 747, 751 (Tenn. Ct. App. 1997)). FloWav invokes equitable estoppel based on Smart's "acts, failures to act, conduct, representations, admissions, and the like" [Doc. 21, pg. 5].

Here, the facts do not support FloWav's allegations that Smart is estopped in any regard. She and Moodie reached an agreement regarding her compensation, and she continued to work for FloWav after that agreement [*See* Doc. 38, ¶¶ 20–22; Doc. 34-3, pgs. 8–10; Doc. 34-6, pg. 5]. FloWav points to no conduct or representations by Smart on which it relied to its detriment. Therefore, Smart's motion is **GRANTED** to the extent she seeks summary judgment on this defense.

### 6. Laches

Smart lastly contends FloWav cannot show laches [Doc. 35, pgs. 15–16]. Under Tennessee's laches doctrine, "equity will not intervene on behalf of one who has delayed unreasonably in pursuing his rights." *Dennis Joslin Co., LLC v. Johnson*, 138 S.W.3d 197, 200 (Tenn. Ct. App. 2003) (quoting *Hannewald v. Fairfield Communities, Inc.*, 651 S.W.2d 222, 228 (Tenn. Ct. App. 1983)). The doctrine only applies if the delay is unreasonable and prejudicial to the opposing party. *Id.*

Here, Smart did not unreasonably delay filing her lawsuit against FloWav. In 2018, she received two $5,000 payments that she and Moodie believed applied toward her salary [Doc. 34-1, pg. 10; Doc. 34-3, pg. 16]. Smart testified Moodie later asked her "can you send me first quarter

2019 … ? Let's try to get you paid on that" [Doc. 34-1, pg. 11]. Then in March 2021 he wrote to her: "Thank you for your patience and we look forward to getting the company into a position financially to fully bring your compensation package current …" [Doc. 34-6, pg. 1]. Thus, as late as March 2021, it appeared Smart would eventually receive the pay FloWav purportedly owed her [*See id.*]. It only became clear FloWav would not honor the agreement on July 13, 2021 after Moodie's termination when Cohen explained, "[Moodie] did mention he was working on a commission plan with you but never told me he finalized it or that you were owed money" [Doc. 34-5]. This lawsuit followed barely five months later on December 15, 2021 [*See* Doc. 1-1, pg. 6]. Even if this delay were unreasonable, FloWav has not shown it was prejudicial. Therefore, Smart's motion is **GRANTED** to the extent she seeks summary judgment on this defense.

## V. CONCLUSION

For the reasons set out above, FloWav's motion [Doc. 31] is **GRANTED**, and Smart's motion [Doc. 34] is **GRANTED IN PART AND DENIED IN PART**. Accordingly, Smart's claim under Tenn. Code Ann. § 47-50-114 is **DISMISSED WITH PREJUDICE** and the Court grants summary judgment as to FloWav's third, fourth, fifth, and sixth affirmative defenses. FloWav's Motion to Stay [Doc. 40] is **DENIED AS MOOT**.

SO ORDERED:

s/Clifton L. Corker
United States District Judge